SOGEVALOR, SA, et al., Plaintiffs,

v.

PENN CENTRAL CORP.,
et al., Defendants.

No. C-1-90-887.

United States District Court,
S.D. Ohio, W.D.

Aug. 16, 1991.

Robert Stachler, James Burke, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon motions to dismiss the amended complaint brought pursuant to Rules 12(b)(6) and 9(b) of Federal Rules of Civil Procedure. Defendants American Financial Corporation ("AFC"), Carl H. Lindner, S. Craig Lindner, Ronald F. Walker, and James E. Evans ("Individual Defendants") joined in a motion to dismiss (Doc. Nos. 3, 24). Defendant Penn Central Corporation ("Penn Central") has also filed a motion to dismiss plaintiff's claims. (Doc. Nos. 4, 26).[1] Plaintiff Melvyn I. Weiss opposes both motions (Doc. Nos. 8, 27) and defendants have replied. (Doc. Nos. 10, 11, 29, 14).

### The Parties

Plaintiff Melvyn I. Weiss allegedly owned 6,000 shares of Penn Central common stock prior to July 26, 1990. He asserts in the amended complaint that he held his shares until January, 1991 when he sold his stock in the open market at a price per share of $19.88. Defendant Penn Central, an industrial manufacturing, defense services and energy concern, is a Pennsylvania corporation whose stock is publicly traded on the New York Stock Exchange. Plaintiff alleges that as of April, 1990, Penn Central had approximately 63,294,235 shares of common stock outstanding.

Defendant AFC is a corporation whose outstanding common stock is owned by defendant Carl H. Lindner, his family and trusts maintained for their benefit. AFC allegedly owned 40.6% of Penn Central common stock by October, 1990. Carl H. Lindner is the Chairman of the Board and Chief Executive Officer of both Penn Central and AFC. Ronald F. Walker is the President, Chief Operating Officer, and a director of both Penn Central and AFC. James E. Evans is a director of Penn Central and a Vice–President and General

James Coogan, Cincinnati, Ohio, for plaintiffs.

---

1. Penn Central incorporates by reference those arguments raised in the AFC motion while lodging additional attacks against the amended complaint in its motion to dismiss.

Counsel for AFC. S. Craig Lindner, son of Carl Lindner, is a director of Penn Central and the Senior Executive Vice–President of American Money Management Corporation, a subsidiary of AFC.[2]

### The Allegations of the Amended Complaint

Plaintiff premises this securities fraud class action on the following allegations. On July 24, 1990, Penn Central reported a cash-rich position of approximately $1 billion, making Penn Central "extremely attractive to many investors." Amended Complaint ¶ 17. Two days later, Penn Central announced that its Board of Directors approved a self-tender offer of up to 6 million shares of its common stock at a price of $26 per share ("First Tender Offer"), some $2 less than Penn Central's reported book value. Penn Central issued a written offer to purchase the securities with attachments dated August 3, 1990 ("Tender Offer Documents"). An amendment to the First Tender Offer was announced by Penn Central's Board of Directors on August 24, 1990. Under the new terms, Penn Central sought to repurchase up to 11 million shares of Penn Central common stock at $23 per share. Penn Central announced on September 18, 1990 that it had purchased approximately 10.9 million shares pursuant to the First Tender Offer.

Plaintiff charges that less than a month after the First Tender Offer, Penn Central announced that it intended to acquire AFC's Non–Standard Automobile Insurance Group ("NSA Acquisition") which "would have effectively allowed C.H. Lindner to effect the transfer of the NSA Group from a Company wholly owned by Mr. Lindner to a company over which he exercised dominion—Penn Central—at an unfair and improper price." Id. ¶ 23. Plaintiff alleges that defendants pursued the NSA Acquisition for the benefit of Lindner and AFC at the expense of Penn Central and its minority shareholders.

Plaintiff further contends that defendants intended "at least as early as August 3, 1990, that Penn Central would acquire AFC's Non–Standard Automobile Insurance Group since Defendants were aware since, at least as early as July, 1990, that transferring the Non–Standard Automobile Insurance Group from AFC to Penn Central would have significant tax advantages for AFC." Id. ¶ 25.

Weiss maintains that he and other shareholders would have tendered their shares during the First Tender Offer had defendants disclosed at that time their intention to use a "substantial percentage of Penn Central's cash" to consummate the NSA Acquisition. Id. ¶ 26. Plaintiff alleges that the price of Penn Central stock fell to $15-⅜ per share after Penn Central's announcement of the NSA Acquisition. On December 18, 1990, Penn Central announced the Second Tender Offer—the repurchase of up to 5 million additional common shares of Penn Central stock at $21 per share, $2 less than the price paid in the First Tender Offer. On February 19, 1991, the terms of the Second Tender Offer were amended by Penn Central to include the repurchase of its common stock at $24 per share up to 5 million shares.

Plaintiff Weiss filed this class action on behalf of himself and all other persons who owned shares of Penn Central common stock on July 24, 1990, did not tender them during the First Tender Offer and who sold Penn Central shares prior to February 19, 1991. Plaintiff asserts that defendants made misrepresentations or omissions of a material fact in connection with the First Tender Offer in violation of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78n and 78t. The amended complaint also contains two pendent state claims, for fraud and deceit and for negligent misrepresentations.

### The Standards for Dismissal

Defendants maintain that plaintiff's claims should be dismissed pursuant to

---

**2.** Plaintiff alleges that the Individual Defendants owned Penn Central stock and stock options totaling one million shares.

Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b). A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a) which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A Court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826 [105 S.Ct. 105, 83 L.Ed.2d 50] (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle them to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] (1957).

*Id.* at 1103.

■ The admonishment to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice & Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358

(1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Wright, Miller & Cooper, Federal Practice & Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit recently clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988); *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). In its scrutiny of the complaint, a Court construes all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Defendants also contend that plaintiff's securities fraud claim cannot withstand scrutiny under Fed.R.Civ.P. 9(b) which provides that:

> ■ In all averments of fraud or mistake, the circumstances
>
> constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

Rule 9(b) read in conjunction with Rule 8(a) requires that the complaint give defendants notice of the nature of the claims against them. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir.1988); *In re U.S. Shoe Corp. Litigation*, 718 F.Supp. 643, 646 (S.D.Ohio 1989) (Rubin, C.J.). Plaintiff must plead the circumstances of the alleged fraud with particularity, including the time, contents of the misrepresentations upon which plaintiff relied, and the identity of the person or persons making the misrepresentations.

*Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984); *Michaels Bldg.,* 848 F.2d at 680 n. 9; *U.S. Shoe,* 718 F.Supp. at 646. Evidence of fraud, however, need not be pleaded. *U.S. Shoe,* 718 F.Supp. at 646.

The requirements of Rule 9(b) ensure that plaintiffs are deterred from filing complaints for the purpose of uncovering through discovering unknown wrongs. *Id.* Giving defendants notice of the grounds of the claims against them and protecting defendants from potential damage to their reputations also form the policy rationale underlying Rule 9(b). Guided by the standards set forth under Rules 12(b)(6) and 9(b), this Court will examine the specific arguments lodged by defendants against the amended complaint.

*Failure to State a Claim Under § 14(e)*

■■ § 14(e) of the 1934 Act prohibits misrepresentations or omissions of material facts as well as "fraudulent, deceptive or manipulative acts" in connection with a tender offer. *See* 15 U.S.C. § 78n(e). A manipulative act within the meaning of § 14(e) is defined as conduct constituting a misrepresentation or nondisclosure which is designed to deceive or defraud investors by controlling or artificially affecting the price of securities. *Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 12, 105 S.Ct. 2458, 2464, 86 L.Ed.2d 1 (1985). § 14(e) does not serve as an "invitation to the courts to oversee the substantive fairness of tender offers; the quality of any offer is a matter for the marketplace." *Id.* Without allegations of misrepresentation or nondisclosure, a cognizable claim under § 14(e) has not been stated. *Id.* Because of the textual similarities between § 14(e) and § 10(b) of the 1934 Act, cases construing Rule 10b–5 are persuasive in the interpretation of § 14(e). *See Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *see also Schreiber,* 472 U.S. at 10 n. 10, 105 S.Ct. at 2463 n. 10; *Field v. Trump,* 850 F.2d 938 (2d Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989).

Defendants' primary arguments supporting dismissal of plaintiff's § 14(e) claim are: (1) the § 14(e) claim is in essence a state law claim for breach of fiduciary duty masquerading as a federal securities law claim; (2) the amended complaint is devoid of allegations that the NSA Acquisition was a "material fact" capable of being disclosed; and (3) plaintiff fails to plead the requisite scienter vital to a § 14(e) claim.

1. Breach of Fiduciary Duty and § 14(e)

Defendants urge the Court to unmask plaintiff's § 14(e) claim and see it for what it is—a state law claim attacking the fairness of the NSA Acquisition. Defendants argue that the disclosure of the NSA Acquisition prior to the First Tender Offer is relevant to a shareholder contemplating tendering his shares only if the NSA Acquisition was priced unfairly. By implication, allegations that the NSA Acquisition was a self-dealing transaction consummated at an improper and unfair price form the core of plaintiff's § 14(e) claim; defendants maintain that such conduct constituting a breach of fiduciary duty on the part of officers and directors does not give rise to a claim under the federal securities laws.

■ It is well-settled that the federal securities laws may not be used to redress state law claims of corporate mismanagement and other breaches of fiduciary duty. *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977); *Schreiber,* 472 U.S. at 12, 105 S.Ct. at 2464; *Field,* 850 F.2d at 946–47. Defendants correctly point out that a plaintiff may not bootstrap a claim for breach of fiduciary duty into a federal securities law claim by alleging the nondisclosure of that breach. *Kas v. Financial Gen. Bankshares, Inc.,* 796 F.2d 508, 513 (D.C.Cir.1986). Succinctly put, allegations that a defendant did not disclose facts material only to a state law fiduciary duty claim does not give rise to a cause of action under the federal securities laws. *Field,* 850 F.2d at 948.

■ Plaintiff does not simply allege self-dealing by defendants in connection with the NSA Acquisition. Weiss asserts that the Tender Offer Documents issued by Penn Central failed to include information

about an allegedly material fact, namely the intention of Penn Central to use its cash to acquire the NSA Group. Allegations of a failure to disclose a material fact in connection with a tender offer are actionable under the federal securities laws.

### 2. Allegations of "Material Facts"

■ The crux of plaintiff's § 14(e) claim is the alleged nondisclosure of the NSA Acquisition during the First Tender Offer. The only allegation in the amended complaint which addresses the timing of defendants' decision to acquire the NSA Group (as opposed to the fairness of the transaction) states that:

Defendants, however, intended, at least as early as August 3, 1990, that Penn Central would acquire AFC's Non–Standard Automobile Insurance Group since Defendants were aware, at least as early as July, 1990, that transferring the Non–Standard Automobile Insurance Group from AFC to Penn Central would have significant tax advantages to AFC.

Amended Complaint ¶ 25. Plaintiff premises this "material fact" concerning defendants' intention to acquire the NSA Group on the alleged awareness of defendants in July, 1990 of the tax advantages of such a transaction. This asserted link between an understanding by directors and officers of a transaction's financial advantages and the likelihood that such a transaction will be considered, pursued and consummated is too tenuous to satisfy the "material fact" elements of § 14(e).

The United States Supreme Court in *Basic Incorporated v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) set forth the definition of "materiality" as dependent upon the *probability* that the transaction will be consummated and its *significance* to the issuer of the securities. *Id.* at 250 (emphasis added). Future corporate events need only be disclosed if the anticipated transactions are "substantially certain to hold." *Radol v. Thomas*, 772 F.2d 244, 253 (6th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986) *citing Starkman v. Marathon Oil Co.*, 772 F.2d 231 (6th Cir.1985), *cert. de-*

*nied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

The amended complaint is devoid of allegations concerning the probability that, during the pendency of the First Tender Offer, the NSA Acquisition would be consummated at a future date. Taking as true plaintiff's allegation that defendants were aware as "early as July, 1990" that the NSA Acquisition "would have significant tax advantages to AFC," this, without more, does not rise to the level of a material fact. The federal securities laws do not contemplate disclosure of future transactions considered by corporations unless such transactions are "substantially certain to hold." Requiring disclosure of every idea, financial stratagem or tax-savings proposal examined by corporate boards would deluge the financial markets with speculative, largely unimportant information. The federal securities laws do not sanction such a flood. To state a valid cause of action under § 14(e), plaintiff must allege a misrepresentation or omission which rises to the level of a "material fact." The allegations contained in the amended complaint concerning Penn Central's examination of the NSA Acquisition during the pendency of the First Tender Offer fall short. Dismissal of the § 14(e) claim on this basis is warranted.

### 3. Scienter

■ A cognizable claim under § 14(e) includes the element of scienter. *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 431 (6th Cir.), *cert. denied*, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980); *see also Connecticut Nat. Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2nd Cir.1987). To state a valid claim under § 14(e), a plaintiff must plead "an intent to defraud," "knowledge of falsity," or a "reckless disregard for the truth." *Id.* Defendants contend that the amended complaint contains conclusory allegations which do not give rise to even the inference of fraud; simply put, the logic of the events alleged by plaintiff militate against any finding of scienter on the part of defendants. Scrutinizing this issue under the standards of a Rule 12(b)(6) motion, this Court concludes that plaintiff

fails to plead the element of scienter vital to a § 14(e) claim.[3]

Merely using the words "intended" and "aware" in Paragraph 25 of the amended complaint does not satisfy plaintiff's obligation to plead scienter. Even plaintiff's use of conclusory language in place of factual allegations regarding defendants' intent does not obscure the irrefutable logic of the amended complaint: the disclosure of an unfairly-priced NSA Acquisition during the pendency of the First Tender Offer would prompt the tender of shares by Penn Central shareholders. The objectives of the First Tender Offer—to encourage Penn Central shareholders to tender their shares—would have been furthered by such a disclosure. This logical inference is more persuasive in light of plaintiff's allegations that the First Tender Offer fell short of its target goal, the repurchase of 11 million shares. Amended Complaint ¶¶ 20, 21.

The events recounted in the amended complaint do not logically support plaintiff's conclusory allegation that defendants intended to defraud plaintiff and other shareholders. Without scienter, a § 14(e) claim cannot stand.

### Conclusion

The amended complaint fails to contain allegations of the misrepresentation or omission of a material fact. Likewise, plaintiff fails to allege the requisite scienter on the part of defendants. Accordingly, plaintiff fails to state a cognizable claim under § 14(e) of the 1934 Act. This Court declines to exercise pendent jurisdiction over plaintiff's state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Defendants' motions to dismiss are well-taken and are hereby GRANTED. Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

**3.** This Court need not reach the issue of whether plaintiff's pled fraud with particularity under Rule 9(b) because the alleged intent to defraud is insufficient as a matter of law.