

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2008

# Trueman v. Upper Chichester

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Trueman v. Upper Chichester" (2008). *2008 Decisions.* Paper 640.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/640

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2762
_____

JEFFREY A. TRUEMAN,

Appellant

v.

CITY OF UPPER CHICHESTER; MICHAEL FANELLI, Police Officer, Badge Number
19, individually and as a Police Officer for the City of Upper Chichester;
DAVID J. MURPHY, Delaware County Regional Court Judge, Magisterial District No.
3202038, Individually and in his Official Capacity; G. MICHAEL GREEN, Delaware
County District Attorney; JACKSON M. STEWART, JR., Chief Deputy District
Attorney, Individually and in their official capacity for the office of the District Attorney

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 04-cv-05085)
District Judge:  Honorable Clifford Scott Green

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2008
Before: MCKEE, SMITH and CHAGARES, Circuit Judges

(Opinion filed:  August 19, 2008)

_____

OPINION

_____

PER CURIAM

Appellant, Jeffrey A. Trueman, appeals pro se from the District Court's orders dismissing his complaint in part, granting judgment as a matter of law in part, and entering judgment following a jury verdict on the remaining claims. For the reasons that follow, we will affirm.[1]

## I.

In the early morning hours of January 31, 2003, Trueman was driving in Upper Chichester Township (the "Township") when Police Officer Michael Fanelli, who was in his police car on routine patrol, saw him drive through an intersection without slowing or stopping at the stop sign. Officer Fanelli pulled his car behind Trueman's and signaled for him to pull over. When Officer Fanelli requested Trueman's license and registration, he noticed the smell of alcohol on Trueman's breath. As a result, Officer Fanelli conducted a field sobriety test. Trueman failed the test. Officer Fanelli then advised Trueman that he was under arrest for driving under the influence of alcohol. In response, Trueman asked Officer Fanelli, "Who sent you, Congressman Weldon?" (Compl. at ¶ 11.) Trueman then made several threatening remarks to Officer Fanelli.

Trueman was taken to police headquarters and charged with driving under the influence of alcohol ("DUI"), terroristic threats, and failure to stop at a stop sign. Prior to trial on these charges, Trueman moved to suppress the evidence arising from the traffic

_____

[1]We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

stop on the ground that Officer Fanelli did not have probable cause. Following a hearing, the Honorable Robert C. Wright of the Delaware County Court of Common Pleas granted Trueman's motion. Consequently, the District Attorney's Office *nolle prossed* the charges. Trueman then asked the District Attorney's Office to investigate Officer Fanelli's conduct in connection with the traffic stop. The District Attorney's Office investigated the circumstances surrounding the arrest, but found no cause for disciplinary action against Officer Fanelli.

II.

In December 2004, Trueman commenced an action under 42 U.S.C. § 1983, claiming that the traffic stop was part of a government conspiracy against him due to his work as a veterans' rights advocate. Trueman alleged federal civil rights violations under the First, Fourth, and Fourteenth Amendments, and also asserted several state law claims. The complaint named as defendants: the Township of Upper Chichester and Officer Fanelli; District Attorney G. Michael Green and Deputy District Attorney Jackson M. Stewart, who were allegedly involved in both prosecuting Trueman and in investigating Officer Fanelli; and Judge David J. Murphy, the Delaware County Regional Court Judge who presided over Trueman's arraignment.

In June 2005, the District Court found that Green and Stewart were entitled to immunity and dismissed Trueman's claims against them. The court later dismissed the complaint as to Judge Murphy on the same ground.

3

Thereafter, the case proceeded to trial against the Township and Officer Fanelli (the "Township Defendants"). At the conclusion of the liability phase, the District Court directed a verdict in favor of the Township. Therefore, the sole issue for the jury was whether Officer Fanelli lacked probable cause to conduct the traffic stop in violation of Trueman's rights under the Fourth Amendment. The jury returned a verdict in favor of Officer Fanelli. Trueman then filed post-trial motions requesting a new trial and renewing certain pre-trial requests. By order entered May 15, 2007, the District Court denied the post-trial motions. The present appeal followed.

III.

A.  Dismissal of District Attorney Green, Deputy District Attorney Stewart, and Delaware County District Justice Murphy

Trueman first challenges the District Court's orders dismissing his claims against Green and Stewart, who were allegedly involved in both prosecuting Trueman and in investigating Officer Fanelli. The District Court found that their actions were entitled to the protections of absolute immunity. We agree that Green and Stewart were absolutely immune from suit for actions taken in connection with prosecuting Trueman, as it is well established that a prosecutor is entitled to absolute immunity for conduct "fairly within the prosecutor's function as an advocate." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (2006) (internal quotations omitted). We are less certain, however, that this immunity extends to Green's and Stewart's alleged failure to conduct an internal investigation into Officer Fanelli's misconduct. See id. (explaining that a prosecutor's administrative duties

4

that do not relate to his preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity) (citation omitted).  We need not reach this question, however, because Trueman's bare allegations do not state a cognizable constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that, before ruling on immunity in § 1983 cases, the court must first determine whether the facts alleged show that the officer's conduct violated a constitutional right).

Regarding Trueman's claims against District Justice Murphy, we find, for the reasons stated by the District Court, that District Justice Murphy was entitled to the protections of judicial immunity.  See Stump v. Sparkman, 435 U.S. 349, 355 (1978) (internal quotations omitted); Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000).

B.    Motion to Amend the Complaint

Next, Trueman claims that the District Court abused its discretion by denying his pre- and post-trial requests to amend the complaint.  Trueman first sought leave to amend in May 2006, approximately six months after discovery had been closed.  At that time, Trueman argued that through discovery, he had obtained additional evidence in support of his theory that the arrest was politically motivated.  In light of this new evidence, Trueman sought to add several new defendants to the complaint.  The Township Defendants opposed the request, arguing that it would be prejudicial to allow Trueman to add entirely new parties after the end of discovery and while their fully-briefed motion for

5

summary judgment was outstanding.

By order entered July 26, 2006, the District Court denied Trueman's motion on the ground that "the proposed amended Complaint would add new parties and new theories of liability not presently the subject of this lawsuit." After the trial, Trueman renewed his request to file an amended complaint, and the District Court again denied the request.

We conclude that the District Court acted within its discretion in denying Trueman's requests to amend his complaint. Although Federal Rule of Civil Procedure Rule 15(a) favors allowing amendment "when justice so requires," a district court has the discretion to deny such a request if amendment would result in "undue prejudice" to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962); Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978) (stating that "prejudice to the non-moving party is the touchstone for the denial of an amendment"). We agree with the District Court that allowing Trueman to add new parties and new theories of liability so late in the game would have significantly altered the scope of the case to the prejudice of the defense.

We also agree with the District Court's decision to deny Trueman's post-trial request to amend. In making his post-trial request, Trueman argued that the District Court erred in denying his first request because the additional defendants and claims "would be necessary to advance justice in this civil rights action." Given that the District Court acted within its discretion in denying the first motion as unduly prejudicial to the

6

defense, as discussed above, we agree with the District Court that Trueman failed to present any compelling reason why he should have been able to amend after judgment was entered against him.  See Werner v. Werner, 267 F.3d 288, 296 (3d Cir. 2001) (internal quotation marks omitted).

C.      Motion for Recusal

Next, Trueman challenges Judge Green's refusal to recuse himself from the case. According to Trueman, Judge Green was unable to approach the case with objectivity because he had previously presided over—and dismissed—another one of his cases.  We disagree.

In July 2006, Trueman sought recusal under 28 U.S.C. § 455(a), which states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Recusal of a judge is proper only if "it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair minded person could not set aside when judging the dispute."  Liteky v. United States, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring).  Here, Trueman failed to cite any conduct by Judge Green that might raise questions as to his partiality; rather, Trueman claimed that the Judge was biased solely because he had previously issued an adverse ruling against him.  Without any other indication that Judge Green harbored a bias against him, there was simply no basis for the Judge to have recused himself.  See id.

We note that, in his appellate brief, Trueman now cites several examples of allegedly prejudicial comments. For instance, Trueman claims that, when he failed to follow the proper procedure for admitting a document into evidence, Judge Green remarked, "that's not the way you do it, but—," which caused several jurors to laugh at him. (Appellant's Br. 27-28.) Trueman also cites as an example of Judge Green's bias his instruction to Trueman to follow the court's rulings or else he would be held in contempt. (Id. 12-13.) We are not persuaded that these comments, or any of the others referenced in Trueman's brief,[2] demonstrate that Judge Green was biased.

---

[2]We pause to specifically address one of Trueman's arguments. In his brief, Trueman alleges that the following comments by Judge Green at the end of the trial "prove gross judicial bias and prejudice," and show that the court had a "pre-determined position" on the case:

> THE COURT: Well, you know, we're not really here, and you make that argument about whether you can see the sign. The question is whether you can see the lights of a vehicle going through without stopping at an intersection at which you, from years of patrolling, now is a controlled intersection. . . . I mean, whether you can see the sign or not, if you know it's a controlled intersection then you see a vehicles' headlights continually moving and going through that, that would be the failure to stop. I don't know why you have to see the sign to know it.
>
> TRUEMAN: Well, with all due respect, in that premise, why was I not found guilty in the criminal proceedings?
>
> THE COURT: You may have just got lucky.

(N.T., 11/29/2006, at p. 119.) Even assuming that these remarks could arguably be construed as improper, we point out that they were made during the hearing on the Township Defendants' Rule 50(a) motion, and were therefore spoken outside the presence of the jury.

D.      Trueman's Request to "Enter Into the Record" his May 11, 2005 Discovery Motions

Trueman's next point of error concerns the District Court's denial of his request to "enter into the record" certain motions that he had improperly filed during discovery. It appears that, in May 2005, Trueman drafted a document entitled "motion to compel discovery, motion to strike frivolous statements, motion for Rule 11 and 37 sanctions . . . arising from bad faith and improper litigation by Defendants." Although the motions were dated May 11, 2005, they were not entered on the docket until November 8, 2005. Whether the delay in docketing was due to clerical error or Trueman's own improper filing is unclear. In any event, at some point in November 2005, Trueman, apparently under the impression that the motions still remained undocketed, requested the District Court to "enter his May 11 Motions into the Court record."

Before considering Trueman's docketing request, the District Court considered the motions themselves and, by order entered November 21, 2005, denied them on the merits. The same day, the District Court denied as moot Trueman's request to "enter his May 11 Motions into the Court record." In denying the latter motion, the court explained that the documents had indeed been docketed, and had been fully considered on the merits.

Trueman then filed a motion seeking reconsideration of the District Court's second order and a "stay" of the first. Trueman argued that he properly filed his motions back in May 2005 and that the clerk's office made a mistake. The District Court denied these requests. Trueman subsequently attempted to appeal from the District Court's order, but

9

we dismissed the appeal for lack of appellate jurisdiction. Trueman now claims that the order has ripened for review, and argues that Judge Green's "unwillingness to remedy the critical 'docket error'" resulted in "manifest injustice." (Appellant's Br. 15.)

We find no abuse of discretion in the District Court's order denying Trueman's motion. As noted above, Trueman's motions were indeed docketed and then considered on the merits. Therefore, the District Court properly dismissed as moot Trueman's request to have them docketed and properly dismissed Trueman's request to stay its order denying the May 11 motions.

E.     Denial of Motion Requesting Jury Visit to Site of Traffic Stop

Prior to trial, Trueman filed a motion requesting leave of court to "grant a jury visit" to the scene of the traffic stop. Trueman explained that his strategy at trial would be to show that Officer Fanelli falsely accused him of running the stop sign on Cherry Tree Road in retaliation for his work as a veterans' rights advocate. According to Trueman, Officer Fanelli, from his vantage point on Weir Road, could not possibly have seen him running the stop sign. Thus, Trueman claimed, it was crucial for the jury to visit the site to see that Officer Fanelli's account of the incident was untenable. Judge Green, however, denied the motion, ruling that Trueman could instead use photographs and diagrams as necessary to depict the intersection at trial. Given that such an on-site visit would be highly out of the ordinary, the District Court acted well within its discretion in denying this request. Furthermore, we have reviewed the photographs and diagrams

10

submitted as evidence, and find that they sufficiently depict the scene of the traffic stop.

F.    Trueman's Proposed Questions for Voir Dire

Trueman next claims that the District Court abused its discretion in precluding him from asking the jury certain questions during voir dire so that he "could seat a fair and impartial jury." (Appellant's Br. 22.)  Prior to trial, Trueman submitted a list of approximately 70 questions concerning the potential jurors' general understanding of the law, individual life experiences, and prior jury service.  When the jury selection process was about to begin, Judge Green explained to Trueman that he would ask the proposed jurors whether they knew any of the parties to the litigation, and explain to them generally what the case was about.  Judge Green then stated:

> I will not go into the political backgrounds or anything of jurors, unless it's something relevant.  And I see nothing here that's relevant.  I would give you an opportunity at the end of my questioning the jury to suggest questions that you would like me to ask the jury.  And certainly I would try to ask the jury those questions.

(N.T., 11/28/2006, at pp. 32-33.)  Although it is not entirely clear from the transcript, Judge Green was most likely reviewing Trueman's list of proposed questions when he stated, "and I see nothing here that's relevant."  Trueman did not object to the court's relevancy ruling.  The Judge then proceeded with the voir dire proceedings, during which only one juror was stricken for cause, and neither Trueman nor the Township Defendants used any of their peremptory challenges.  It does not appear that Trueman requested any other questioning or made any other objections to the voir dire procedure.

11

Thus, it appears that Trueman never objected to the District Court's decision to preclude his proposed questioning. Furthermore, to the extent that Trueman wished to obtain additional information from the proposed jurors after the court had concluded its questioning, Trueman apparently declined to do so. As a result, he has relinquished the opportunity to challenge this issue on appeal. See United States v. Urian, 858 F.2d 124, 126 (3d Cir. 1988) (holding that defendant failed to preserve the issue of whether the district court erroneously refused to ask certain questions of the prospective jurors).

      G.     Subpoena of V'ERPA Member, Leigh E. Wise

      Trueman's next issue on appeal is "whether Judge Green's allowing of an untimely subpoena upon V'ERPA member Leigh E. Wise was highly prejudicial and obstructed Appellant's rights to a fair trial?"[3] (Appellant's Br. 18.) It appears that, sometime prior to trial, Trueman identified Wise as a potential witness, but did not allow the defense to depose her. As a result, on the first day of the trial, the defense sought to depose Wise before she took the stand. At that time, the defense also argued to the court that Wise should not be allowed to testify at all:

> Leigh Wise is going to get up there, she's not a lawyer, and she's going to pontificate on the law. . . . I have to depose her, if she's going to testify. But she shouldn't even be allowed to testify, Judge, she knows nothing about Mr. Trueman and what took place that night that Fanelli stopped him.

(N.T. 11/27/2006, at p. 9.) In response, Trueman conceded that Wise did not have any

---

[3]Trueman is the founder of an organization known as Veterans Equal Rights Protection Advocacy, Inc. (" V'ERPA"), of which Wise is a member.

12

personal knowledge of the traffic stop, but explained that she had "personal knowledge of the damages that resulted from the illegal stop." The District Court then held that Wise could testify as to damages, but would not be permitted to testify during the liability phase of the trial.[4]

On appeal, Trueman claims that the "Wise-subpoena highly prejudiced" him and caused "grave damage to his constitutional due process rights to execute his [case-in-chief] to its completion." (Appellant's Br. 20.) Although Trueman expresses his objection to the issuance of the subpoena, it appears that he really means to challenge the court's decision to preclude him from presenting Wise's testimony during the liability phase. Given that, as noted above, Trueman informed the court that Wise's testimony went solely to damages, it is difficult to see how he was prejudiced by the court's decision. Therefore, we find no abuse of discretion here.

H.    Denial of Motion to Subpoena Congressman Curt Weldon

In addition to Ms. Wise, Trueman also identified former Congressman Curt Weldon as a potential witness at trial. Trueman believed that Congressman Weldon was part of the alleged government conspiracy to stifle his work as a veterans' rights advocate, and that, as part of the conspiracy, Congressman Weldon sent Officer Fanelli to arrest him under the pretense of a traffic violation. Prior to trial, Trueman confirmed his intention to subpoena Congressman Weldon and informed the court that some type of

---

[4]It appears that Wise was never actually deposed. (N.T., 11/28/2006 at pp. 168-69.)

13

incident with the Congressman—which Trueman believed was somehow relevant to the present case—had recently occurred in Russia. The District Court denied Trueman's request to subpoena Congressman Weldon, explaining to him as follows:

> Listen, the police misconduct here, as you have charged it in your complaint, is the arrest of you for inappropriate reasons. . . . Now if you think that now, since Congressman Weldon has been the subject of some publicity, that you're going to try all of the allegations about Mr. Weldon in this case, that's not going to happen. . . . You're going to—I'll let you proceed according to your complaint. But as to what Mr. Weldon did or did not do in regard to someone in Russia, is not going to be a subject matter of this suit.

(N.T., 11/27/2006, at pp. 22-23.)

We are unable to find any abuse of discretion in the District Court's decision. As noted above, Trueman apparently believed that Congressman Weldon was behind the traffic stop. We see no indication in the record, however, that Trueman had any evidence whatsoever tying him to the arrest. Without any such evidence, the District Court appropriately determined that Congressman Weldon's testimony was not relevant. See Fed. R. E. 401.

I.     Exclusion of Trueman's Proposed Police "Expert"

Trueman also sought to introduce retired police officer Steve Copeland as an expert witness at trial. According to Trueman, Copeland would have testified that Officer Fanelli failed to follow proper safety procedures when he conducted the stop.[5] Prior to

---

[5]It is not entirely clear what the basis for Copeland's testimony would have been. At the pre-trial hearing, Trueman told the court that, "Mr. Copeland, after he reviewed the evidence, said that he would be willing, based off of facts of the egregiousness, to testify

14

trial, the Township Defendants sought to preclude Copeland's testimony on the ground that Trueman had failed to provide an expert report or curriculum vitae on his behalf. At the pre-trial hearing, Judge Green stated that, although Copeland might be permitted to testify as a fact witness to those facts of which he had personal knowledge, the court would not permit him to opine that Officer Fanelli failed to take sufficient safety precautions because it was not a proper subject for expert testimony. Judge Green then stated that he would take the issue under advisement, and refrained from making a final ruling at that time.

Now Trueman claims that the District Court's decision to prohibit Copeland's testimony denied him a fair trial. As an initial matter, we note that it is not clear from the record whether the District Court ever actually reached a final decision on the issue; our review of the trial transcript does not reveal any further discussion of the matter. Moreover, to the extent that the District Court did decide to exclude Copeland's testimony, we see no error there, as an opinion that Officer Fanelli put himself in danger during the arrest would not be probative of the issue at trial, namely, whether there was probable cause for the arrest. See Fed. R. E. 401.

J.     Exclusion of Judge Wright's Order Granting Trueman's Motion to Suppress in the Underlying Criminal Case

_____

as an expert police office of 33 years, that he would never make a traffic stop based off of exhibit P-1. Nobody would." (N.T., 11/27/2006, at p. 53.) Exhibit P-1, however, is a police log entry by Officer David R. DiSands, the officer who transported Trueman from the police department to the courthouse for arraignment.

15

Next, Trueman claims that the District Court erred in precluding him from introducing into evidence Judge Wright's order in the underlying criminal case finding that the traffic stop was illegal. At trial, Trueman presented as a witness Thomas T. Bush, Chief of Police for the Township. During Chief Bush's testimony, Trueman attempted to have him read into the record Judge Wright's order. When the defense objected, Judge Green sent the jury out of the courtroom and explained to Trueman that Judge Wright's decision was not admissible. Specifically, Judge Green stated as follows:

> What I'm saying is that you're trying this case here and asking the jury to determine whether there was an unconstitutional conduct on behalf of Officer Fanelli based upon the record presented here. Judge Wright determined his suppression motion based upon what was before Judge Wright. I don't know and can't tell whether the identical evidence before Judge Wright is that which is being submitted to this jury. Therefore, this is neither to be offered to the jury informationally or is binding on them. This jury is going to make a determination in this case based upon the record submitted here and not the suppression record before Judge Wright.

(N.T. 11/27/2006, pp. 127-28.)

We see no error in the District Court's decision. In order to prevail on his Fourth Amendment claim, Trueman was required to show that Officer Fanelli's decision to conduct the traffic stop was not based on probable cause. See Whren v. United States, 517 U.S. 806, 810 (1996). Given that the criminal court's order does not state the basis on which it found that the traffic stop was illegal, that court's legal conclusion was not relevant to determining whether Officer Fanelli lacked probable cause.[6] Therefore, we

---

[6]We note that, under principles of collateral estoppel, the state court's ruling was not binding on the District Court as a matter of law. See Smith v. Holtz, 210 F.3d 186, 199

16

conclude that the District Court did not err in excluding this order.[7]

K.  Attorney Gallagher's Alleged Attacks on Trueman's Character

Next, Trueman claims that, "attorney Gallagher's rants to discredit the honor, integrity and character of the Appellant in front of the jury calls for a new trial, in of [sic] itself." (Appellant's Br. 27.)  Trueman, however, fails to direct this Court to the specific questions or comments that might be prejudicial.  Therefore, we are unable to review this claim.[8]  See Fed. R. App. P. 28(a)(9)(A) (providing that the appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

L.  Alleged Jury Misconduct

Trueman's next complaint concerns alleged jury misconduct at the end of the first day of the trial.  Specifically, Trueman claims that at that time, Wise witnessed Police Chief Thomas T. Bush—who had taken the stand earlier that day—speaking to several members of the jury outside the courtroom.  The following morning, Trueman brought the alleged incident to Judge Green's attention.  Trueman was unable, however, to identify

n.18 (3d Cir. 2000).

[7]In his brief, Trueman lists as a separate point of error, "whether all Post-trial Filings were arbitrarily dismissed by the Judge Green." (Appellant's Br. 29.)  In support of this claim, however, Trueman simply reiterates his objection to the District Court's decision to exclude Judge Wright's order from the underlying criminal case.

[8]In fact, most of Trueman's argument in support of this claim concerns comments made by Judge Green, not Mr. Gallagher. (Appellant's Br. 27-28.)  We considered these and other allegations that Judge Green made improper comments in Section B. above.

which jurors had been involved. As a result, Judge Green told Trueman to ask Ms. Wise to identify the jurors to him, and to then relate their identities to the court at the next recess. Judge Green assured Trueman that he would then question the jury about Wise's allegations. In the meantime, Judge Green reminded the jury that they were not permitted to have any substantive conversations with parties or witnesses.

Based on our review of the trial transcript, Trueman never raised the issue on the record again. In light of the limited information that Trueman gave the court, and in light of the fact that the court promptly cautioned the jury against any further communication with witnesses, we cannot say that the District Court erred in failing to take any additional action in response to Trueman's allegations.

M.      Judgment as a Matter of Law for the Township

Next, Trueman claims that the District Court erred in granting the Township's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a). At the close of the Township Defendants' case, defense counsel argued that Trueman had failed to establish that the Township had in place any policy or practice to violate citizens' constitutional rights; that the Township had reason to believe that Officer Fanelli would violate a citizen's constitutional rights; or that the Township had failed to adequately train the police department. The District Court granted the Township's motion, issuing an oral ruling as follows:

> . . . I will grant the motion as it relates to the Township of Upper
> Chichester because there is absolutely no evidence of any policy

18

regulation procedure law that authorizes unlawful conduct by a police officer, nor is there any evidence from which a jury could find that they completely ignored conduct of officers or that there was a failure to train or anything else.

They're just not in this case. You attempted to make that assertion and prove it, but the witnesses you called all testified to the fact of the training and so forth of their officers. So, I will grant the motion as to all of your claims as it relates to Chichester because as I understand it, you would not have claims under their statutes against Chichester anyway. They would be barred.

(N.T., 11/30/2006, at p. 120.)

Based on our review of the transcripts, it appears that the only claim against the Township at trial was one for negligent supervision under section 1983. In order to succeed on this cause of action, Trueman had to prove the existence of a policy or custom that resulted in a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 694-95 (1978). A municipality cannot be held liable under section 1983 on a respondeat superior theory. Id. at 691. Thus, liability for failure to train subordinate officers will lie only where a constitutional violation results from deliberate indifference to the constitutional rights of the municipality's inhabitants. Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (internal quotations omitted).

Based on our careful review of the record, we agree with the District Court that the jury could not reasonably have found in Trueman's favor on his claim against the Township. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) ("A motion for judgment as a matter of law under Federal Rule 50(a) 'should be granted only if,

19

viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'") (quoting Macleary v. Hines, 817 F.2d 1081, 1083 (3d Cir.1987)).  Neither the testimony that Trueman introduced nor any other evidence admitted at trial gave the jury reason to believe that the Township had an inadequate training program or a municipal policy of negligent supervision which rises to the level of deliberate indifference required for section 1983 liability.  Therefore, we affirm the District Court's order granting judgment as a matter of law in favor of the Township.

N.      Whether the Jury Should have Ruled in His Favor

Finally, Trueman argues that, based on the evidence he presented through the testimony of Officers Fanelli and Smoak, the jury should have found in his favor.   First, Trueman claims that, if the jurors had been "paying attention," they "would have concluded via the preponderance of the evidence standard that Fanelli was liable to the Appellant for his 'illegal' police conduct."  (Appellant's Br. 24-25.)  Trueman further alleges that Officer Fanelli's testimony lacked credibility, and that, as a result, "the jury's verdict on behalf of Fanelli was grossly wrong [and] must be overturned in the interest of justice."  (Id. 26.)  Trueman also believes that the testimony of Officer Smoak, an Upper Chichester Township police officer who was present at the scene of Trueman's arrest, "should be discounted by this Court" because he lacked credibility on the stand.[9]  (Id. 26.)

_____

[9]To the extent that Trueman argues that he should have been permitted to amend the complaint in order to add Officer Smoak as a defendant, we have considered this

20

In making these arguments, Trueman misunderstands the role of this Court; we may not weigh the evidence, determine the credibility of witnesses, or substitute our own version of the facts for the jury's version.  See Lighting Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir.1992)).  Therefore, we will not disturb the jury's verdict on the grounds that Trueman suggests.

IV.

We have reviewed Trueman's remaining allegations of error and find them meritless.  Therefore, for the foregoing reasons, we will affirm the District Court's orders.

---

argument in section A. above.